[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Introduction and Factual Background
1.
On April 1, 1987, the plaintiff filed the instant action seeking a dissolution of her marriage. She later amended her prayer for relief and requested a legal separation which was granted on October 21, 1988, Hon. Max H. Reicher, State Trial Referee. On June 11, 1990, the defendant sought to dissolve the marriage and on October 29, 1990 that request was granted by the Hon. Julius J. Kremski, State Trial Referee, who incorporated the orders previously entered by Judge Reicher. The plaintiff appealed and on July 9, 1991, the Appellate Court upheld the granting of the dissolution but remanded for a full hearing on the financial terms of the dissolution decree. Mignosa v. Mignosa, 25 Conn. App. 210, 216 (1991).
2.
On February 27, 1992, this court commenced a hearing, pursuant to the Appellate Court's directive, on the parties' 3 respective financial conditions in October 1990. The defendant testified that he had retired under a physical disability from CT Page 3884 his position with the New Britain Fire Department in April 1964. His testimony and his financial affidavit of October 29, 1990 (Exhibit 5), indicated that he received on a weekly basis $378.00 from his pension, $162.79 from rental property and $19.50 from worker's compensation, or after health deductions of $127.79, a total of $432.50. With the exception of a 1/2 interest in the family house at 64 Rhodes Street, New Britain, Connecticut, his assets were minimal. Mr. Mignosa's affidavit also showed weekly expenses of $568.16 which included $150.00 alimony and a Blue Cross/Blue Shield payment of approximately $36.00 for his wife. Mrs. Mignosa's affidavit showed a weekly income of $205.30 from her job at the Weathervane, $30.00 from her part-time job at the New Britain Herald and $150.00 per week alimony. After deductions, her net weekly income was $319.29. Her weekly expenses totaled $451.46 including a rent payment of $98.84. She listed her 1/2 share in Rhodes Street, New Britain among her assets.
3.
 a.
This court heard testimony that 64 Rhodes Street, a three family house with a three car garage built in the 1890's, had an August 1991 value of $110,000.00. (Exhibit 1). At present, the defendant occupies the first floor and leases the second floor. The third floor is not being rented. The court also received testimony that the house is not in the best of shape.
 b.
The plaintiff and the defendant have four daughters — all of whom testified at the trial. They presented a picture of parents who were constantly arguing, yelling and fighting — a situation that led to serious substance abuse by one party. Unfortunately, there was little love between father and daughters and that situation has now resulted in a separation between grandfather and grandchildren. The daughters were and have remained close to their mother. One daughter testified that her father was "high handed and that everything had to be done his way." Another told of going to bed shaking as a result of the arguments. A third testified that their parents did not have a healthy relationship, that her father blamed her mother for everything and that he would bang the table, etc. The fourth described the marriage as abusive, with constant arguments and threats initiated by a jealous husband.
 c.
The court also heard testimony from Mary Nolte who CT Page 3885 has had a relationship with the defendant since May 1988 and who has lived with the defendant since March 1989. She testified that she has been purchasing the groceries and that Mr. Mignosa has paid for restaurants (twice a week) and entertainment with the two expenses being almost equal. In 1989, the couple went to Las Vegas, in 1990 the defendant paid for a cruise to the Bahamas and Disney World and since then, the two have taken other trips. She indicated they "go dancing a couple times a week."
 II.
Discussion
 a.
In remanding this case, the Appellate Court instructed this court to determine whether the orders entered at the time of the legal separation were fair and equitable in light of the circumstances existing at the time of the dissolution. Mignosa, supra, 216. The orders at that time included awarding the defendant exclusive possession of 64 Rhodes Street and all rents derived therefrom. Additionally, bank accounts were to be divided equally and the defendant was to pay the plaintiff $150.00 per week periodic alimony and pay the plaintiff's medical insurance. The testimony of Mrs. Mignosa and the arguments of counsel indicate that Judge Reicher's orders were founded upon a 1988 understanding of the parties — the basis of which no longer existed at the time of the dissolution. Essentially, Mrs. Mignosa traded the use of the home for the protection of her former husband's pension rights. Both parties stipulated and this court was additionally informed by a New Britain Fire Department official that as a result of the dissolution, the plaintiff's interest in that pension would be terminated after the death of the defendant. With a legal separation the pension benefits would not be affected — but with a dissolution, they would terminate.
The legislature has instructed the trial court to use a number of factors, including but not limited to, the length of marriage, the causes of the dissolution, the age, health, station, occupation, amount and sources of income, employability and the needs of the parties in determining alimony and the assignment of property. General Statutes Sec. 46b-81-82. After reviewing the testimony and the exhibits, it is clear that Judge Reicher's initial orders at the granting of the separation should now be modified.
In addition to the pension rights, there are a number of other grounds for not adopting Judge Reicher's orders. Mrs. CT Page 3886 Mignosa's income in 1990 was based on primarily two jobs, a full-time job paying approximately $10,675.00 per year and a part-time job paying $1,560.00. While she was receiving alimony of $7,800.00, her adjusted gross income of approximately $20,000.00 was still 20% less than her former husband's and she was taxed approximately $3,100.00 leaving a significant disparity. Mrs. Mignosa's living expenses were also much higher than those of Mr. Mignosa since she incurred rental expenses. According to a summary submitted by her attorney, which this court finds reasonable, her net disposable income was $11,750.00, while Mr. Mignosa's was $17,500.00.
This court also notes that Mrs. Mignosa's health is not good. She is now 64 years old and testified that she has a bad back and foot problems which not only cause her to lose time at work but may also cause her to discontinue her part-time job. The court heard testimony that she was discouraged — if not totally prevented — from obtaining employment skills during the marriage.
Finally, the testimony concerning the causes of the dissolution certainly suggests that the defendant's conduct prevented the marriage from being a loving, nurturing relationship between two equal parties.
It is obvious that 64 Rhodes Street is not only the main asset of both parties but also the only income producing asset. The plaintiff argues that she cannot live in the same building with the defendant — even in separate apartments. To the extent the house is a three family as opposed to a large complex that is probably true. She likewise states that she would be unable to maintain the property if she had sole possession and thus, the plaintiff seeks to have the property sold with the parties receiving different percentages of the selling price. Such a sale would necessarily mean the reduction of income as well as the addition of an expense for Mr. Mignosa. Thus, the sale of the house does not make good financial sense. Yet, under the circumstances of this case, it is unfair to allow the defendant to have sole use.
 III.
Conclusion
After carefully considering the evidence and the financial affidavits in the case and taking into consideration all of the criteria set forth in Connecticut General Statutes, Section 46b-81, as to the division of marital assets and Section46b-82, as to awarding alimony, this court enters the following orders: CT Page 3887
1. The marital home at 64 Rhodes Street, New Britain, Connecticut shall be sold and the proceeds (sale price after normal closing costs, commissions, taxes and adjustments) shall be distributed in a ratio of 60% to the plaintiff, 40% to the defendant. The property shall be placed on the market by June 15, 1992, and neither party will take any action to hinder the sale. The parties may seek advice from this court if the offering price is under $100,000.00.
2. The defendant shall pay and/or continue paying the plaintiff's medical insurance expenses.
3. The defendant shall pay alimony to the plaintiff at the rate of $175.00 per week until the transfer and distribution of the proceeds of 64 Rhodes Street, New Britain at which time the alimony shall be reduced to $125.00 per week. This amount represents an appropriate award taking into account the reduction of income from the house, the additional income not reflected in Exhibit 5 of $100.00 per week food from the defendant's companion, the payment of the medical insurance, and the disparity of the plaintiff's and defendant's nontaxable and taxable income.
4. Other personal property including bank accounts has been already divided.
MARSHALL K. BERGER, JR. JUDGE, SUPERIOR COURT